# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CATHERINE MCGEE,

    Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

    Defendant.

Case No. 1:16-cv-01359-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.     INTRODUCTION

On September 14, 2016, Plaintiff Catherine McGee ("Plaintiff") filed a complaint under 42 U.S.C. §§405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for Supplemental Security Income ("SSI") benefits. (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017). She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

Sheila K. Oberto, United States Magistrate Judge.[2]

## II. BACKGROUND

Plaintiff was born on September 17, 1963, has a high school education, and previously worked for a short period of time in 1986 as a receptionist at a retirement center. (Administrative Record ("AR") 38-39, 53, 160, 178, 182.) On June 14, 2013, Plaintiff, who was 49 years old at the time, protectively filed a claim for SSI payments, alleging that she became disabled on May 1, 2013, due to severe chronic depression. (AR 16, 160, 181.)

**A.    Relevant Medical Evidence[3]**

**1.    OMNI Family Health**

On May 2, 2013, Plaintiff presented at OMNI Family Health ("OMNI"). (AR 315.) Among other things, she was found to be positive for depression. (*Id*.) It was noted that Plaintiff's depression had worsened after her mother's death in March 2013, and that Plaintiff was attending group grief counseling. (*Id*.)

On June 10, 2013, Plaintiff presented at OMNI with excessive bleeding during her menstrual cycle. (AR 312.) Plaintiff reported that she stopped taking Prozac when the bleeding started—believing that the Prozac might be the cause—but that the Prozac seemed to help with her depression. (*Id*.) Plaintiff also reported that she ceased attending group counseling because she "could not relate." (*Id*.)

On July 17, 2013, Plaintiff presented at Omni with depressed mood, anxious, fearful thoughts, and difficulty initiating asleep. (AR 307.) Plaintiff was positive for depressed mood, fatigue, restlessness, difficulty concentrating, difficulty initiating sleep, feelings of guilt, and marked diminished interest or pleasure. (AR 308.) She was negative for anxiety, suicidal ideation, and headaches. (*Id*.) Plaintiff's treatment plan included a referral for behavioral health counseling—at Plaintiff's request—and information about the depression hotline. (AR 307.)

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 8.)

[3] As Plaintiff's assertion of error is limited to the Administrative Law Judge's finding at Step Four of the sequential analysis that the opinion of consultative psychologist, Lanita Barnes, Psy.D., was not credible, only evidence relevant to that argument is set forth below.

2

On August 15, 2013, Plaintiff presented by telephone at OMNI. (AR 306.) Plaintiff reported severe headaches as a result of her Celexa prescription, and she was scheduled for an in-person appointment. (*Id.*)

On August 27, 2013, Plaintiff presented at OMNI for a follow-up appointment. (AR 303.) Plaintiff reported depressed mood, difficulty initiating and maintaining sleep, restlessness, and difficulty functioning. (*Id.*) Plaintiff denied having thoughts of suicide or death. (*Id.*) Plaintiff reported that she was taking her brother's Benzodiazepines, and that his medication was helping with her impairments. (*Id.*) Plaintiff was prescribed Zoloft and Klonopin. (AR 305.)

On October 11, 2013, Plaintiff presented at OMNI for a follow-up appointment. (AR 299.) Plaintiff reported difficulty functioning, depressed mood, diminished interest or pleasure, and a decreased need for sleep. (*Id.*) She denied having headaches. (AR 300.) Plaintiff further reported that she ceased taking Celexa because it was causing chest pain and agitation, but that Zoloft was helping with her insomnia. (AR 299.) It was noted that Plaintiff's initial symptoms improved. (AR 299.) It was recommended that Plaintiff continue taking Zoloft and Klonopin, but that she cease taking Celexa. (AR 301.) Plaintiff was advised to present at the emergency room if she develops further chest pain. (*Id.*)

On December 13, 2013, Plaintiff presented at OMNI for prescription refills. (AR 296.) Plaintiff complained of anxiety and depression, and denied having any headaches. (AR 297.) Plaintiff was advised to follow up with psychiatry, continue her medication treatment as prescribed, but to taper her use of Klonopin. (AR 298.)

On October 14, 2014, Plaintiff presented at OMNI concerning, among other things, her headaches and for a refill of her depression medication.[4] (AR 345.) Plaintiff complained that, for the past year, she had been suffering headaches. (*Id.*) Plaintiff's existing prescriptions were refilled, and she was prescribed Flonase. (AR 348-49.)

On December 22, 2014, Plaintiff presented at OMNI for a refill of her depression medication. (AR 369.) Plaintiff reported that she had a psychiatry appointment scheduled for

---

[4] Plaintiff presented at OMNI several times between the above-discussed visits in December 2013 and October 2014, but only for procedures and examinations related to her vaginal bleeding and toenail fungus. (*See* AR 325-44, 351-56.)

3

January 2015, but that her current depression medication dosage was too small. (*Id*.) Plaintiff was diagnosed with anxiety, depression, decreased hearing, headaches, and tachycardia. (AR 372.) Plaintiff's Zoloft dosage was increased, and she received a referral to an audiologist. (*Id*.)

On January 16, 2015, Plaintiff presented at OMNI for medication management with psychotherapy. (AR 361.) It was noted that Plaintiff was taking hydroxyzine, Flonase, Penlac, Ocean Nasal, Zoloft, and terbinafine. Plaintiff was diagnosed with anxiety. (AR 362.)

### 2. College Community Services

On July 23, 2013, Plaintiff presented at College Community Services for a psychiatric evaluation. (AR 267.) Plaintiff was evaluated by Jeffery Kaya, ASW, a social worker. (*Id*.) Plaintiff complained that she was depressed all the time—that she had been depressed since childhood, and that she experienced hopelessness from the circumstances surrounding her brother's loss of eyesight and her mother's death. (AR 280.) Plaintiff reported functioning better before her mother's death. (*Id*.)

Social worker, Kaya, noted that Plaintiff was depressed, inattentive, and that her ability to concentrate was impaired. (AR 284, 289.) However, Plaintiff's judgment, insight, and memory were good, thought processes were coherent and unremarkable, and she had average intelligence. (AR 283, 284, 289.) Plaintiff's speech and abstraction were normal. (AR 283, 284.) Plaintiff's sleep and appetite were adequate. (AR 289.) Plaintiff was diagnosed with major depressive disorder, recurring, moderate. (AR 293.) Plaintiff's prognosis was fair. (AR 287.)

Social worker Kaya recommended that Plaintiff increase her engagement in pleasurable activities (she expressed an interest in reading, typing, art, and travel), and appropriately grieve her mother's death. (AR 287.) Plaintiff stopped taking Celexa due to palpitations; at the time of the evaluation, she was taking Klonopin, Citalopram, and Zoloft. (AR 280, 281, 290.)

### 3. Lanita Barnes, Psy.D., MDSI Physician Services

On August 10, 2013, Plaintiff presented at MDSI Physician Services for a psychiatric evaluation. (AR 259.) Plaintiff was examined by Lanita Barnes, Psy.D.[5] (*Id*.) Plaintiff

---

[5] In addition to examining Plaintiff, Dr. Barnes took into account the records and reports produced by the Social Security Administration and the Department of Social Services. (AR 259.)

4

complained of very poor concentration, some confusion, and inattentiveness. (AR 260.) Plaintiff reported having suicidal thoughts as recent as "this week," but stated that "so far" she had no plan to act on it. (*Id.*) Plaintiff described her daily routine, stating that she prepares breakfast and dinner, washes dishes, cleans the house, watches television and uses the internet occasionally, and participates in art and computer classes at the local college. (*Id.*)

Dr. Barnes observed that Plaintiff was thin, sat stiffly, behaved as withdrawn and disconnected, and appeared to lack attentiveness and engagement. (AR 260.) Plaintiff spoke and processed information slowly, and she appeared to have difficulty hearing. (*Id.*) Plaintiff appeared to be severely depressed as she displayed a flat affect. (*Id.*) Plaintiff exhibited lethargy and anhedonia in her affect, and she appeared to lack emotional and physical strength. (*Id.*) Plaintiff displayed an overwhelming sense of hopelessness and helplessness, exhibited by her movement, posture, affect, and responses to the questions. (*Id.*) Plaintiff was tearful and cried periodically during the evaluation. (*Id.*) Dr. Barnes observed that Plaintiff had poor resilience, low motivation, and virtually no coping skills. (*Id.*) Dr. Barnes assessed Plaintiff's memory and her mathematical calculations as poor. (AR 262.)

Dr. Barnes diagnosed Plaintiff with major depressive disorder, moderate-to-severe family stressors, and a Global Assessment of Functioning ("GAF") score of 62.[6] (AR 262.) Dr. Barnes assessed Plaintiff's prognosis for recovery as poor. (*Id.*) Dr. Barnes stated, "Although she was compliant with psychotropic medications, her depression and thoughts of suicide were significant and unimproved by medication compliance." (*Id.*) Dr. Barnes found that Plaintiff's symptoms were closely tied to her living conditions and current circumstances. (*Id.*)

With regard to Plaintiff's functional capacity, Dr. Barnes opined that Plaintiff was moderately impaired in her ability to perform simple and repetitive tasks, as well as detailed and complex tasks. (AR 263.) Dr. Barnes found Plaintiff to be moderately impaired in her ability to accept instructions from supervisors and to interact with coworkers and the public. (*Id.*) Plaintiff

---

[6] Global Assessment of Functioning is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV–TR"). A GAF of 61-70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood, and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

was also deemed moderately impaired in her ability to regularly perform work activities, and she was deemed markedly impaired in her ability to deal with workplace stressors. (*Id.*) Dr. Barnes assessed Plaintiff's concentration and attention as poor. (*Id.*) Dr. Barnes found, however, that Plaintiff was capable of managing funds. (*Id.*)

### 4. State Agency Physicians

On August 29, 2013, R. Paxton, M.D., a state agency physician, assessed Plaintiff's mental residual functional capacity ("RFC")[7] and found that Plaintiff had no limitations to her understanding and memory, or to her sustained concentration and persistence, but that she had moderate social interaction limitations. (AR 73.) Dr. Paxton assessed Plaintiff's medically determinable impairments and severity, and found that Plaintiff had mild restrictions to activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two repeated episodes of decompensation, each of extended duration. (AR 71.) Dr. Paxton found Plaintiff's subjective complaints to be only partially credible, considering her treatment history. (AR 72.)

Dr. Paxton found Dr. Barnes' opinion about Plaintiff's limitations to be more restrictive than his own findings. (AR 74.) Dr. Barnes opinion relied on her assessment of limitations, which resulted from impairments that Dr. Barnes neither treated nor examined. (*Id.*) Further, Dr. Barnes' opinion overestimated the severity of Plaintiff's limitations, and lacked substantial support from other evidence in the record. (*Id.*) Finally, Dr. Barnes' brief treating relationship with Plaintiff was not long enough in duration to give Dr. Barnes a picture of Plaintiff's limitations. (*Id.*)

On January 10, 2014, a state agency psychologist, Mark Berkowitz, Psy.D., agreed with Dr. Paxton's assessment of Plaintiff's medically determinable impairments and severity, finding that Plaintiff had mild restrictions to activities of daily living, mild difficulties in maintaining

---

[7] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two repeated episodes of decompensation, each of extended duration. (AR 84.) Dr. Berkowitz assessed Plaintiff's mental RFC, and found that Plaintiff had moderate limitations to her ability to understand and remember detailed instructions, moderate limitations to Plaintiff's sustained concentration and persistence, and moderate limitations to her social interaction. (AR 85-86.)

Dr. Berkowitz agreed with Dr. Paxton about the above-referenced inconsistencies in Dr. Barnes' opinion. (AR 87-88.) Additionally, Dr. Berkowitz opined that

> [Plaintiff] reports depression, anger, anxiety, lacks energy and that she had been doing fairly well until her mother's death in 3/13 and she has also struggled mor[e] financially since her passing. She has recent treatment and reports doing a bit better since meds were switched. [The mental status exam] is poor, [but] not evident as being that bad in the rest of the record but [Dr. Barnes] still assigns a relatively high GAF of 62. While [Dr. Barnes] concludes [Plaintiff] is markedly impaired to deal with stressors, the totality of the record does not appear to suggest she is precluded from all work. [Plaintiff] seems somewhat dependent on brother's care-giver and the record suggests this is somewhat of a life-long pattern of dependency rather than indicative of a debilitating depression. Allegations are partially credible. [Plaintiff] is able to persist at tasks that can be learned in up to one month on the job with occasional public contact.

(AR 87.).

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for SSI benefits initially on September 10, 2013, and again on reconsideration on January 15, 2014. (AR 66-76, 78-89.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 109-11.) At the hearing on January 27, 2015, Plaintiff appeared by video with a non-attorney representative and testified before an ALJ as to her alleged disabling conditions. (AR 34-65.)

**1.    Plaintiff's Testimony**

Plaintiff testified that she suffers from depression, anxiety, headaches, hearing loss, memory loss, and insomnia. (AR 40-41, 42, 54, 57.) Plaintiff testified that her depression and

7

headaches have worsened since the alleged disability onset date in 2013, and that the depression is the primary cause of her inability to function. (AR 40-41, 54; *see also* AR 54 (explained that her reference to her "head condition" describes both her depression and her headaches)). She complained that, as a result of the depression, she "feels tired and down every day," and has "as bad feeling of sadness . . . every day." (AR 41, 54.) Plaintiff testified, however, that her anxiety has been well controlled since the alleged disability onset date. (AR 42.)

With regard to her daily activities, Plaintiff testified that she struggles to perform household chores. (AR 40.) She regularly washes dishes, dusts, sweeps, mops, vacuums, does laundry, and does yard work. (AR 40, 45, 49.) Plaintiff also shops for groceries approximately twice per week, and she walks her sister's dogs twice per week. (AR 46, 47.) Plaintiff, however, does not cook, but rather prepares meals in the microwave. (AR 45.) Nor does Plaintiff drive or take public transportation. (AR 48.)

Plaintiff has never lived alone. (AR 50.) Plaintiff lived with her mother until 2013, when her mother passed away. (*Id*.) Plaintiff now lives with her disabled brother and his caretaker. (AR 46, 50.) Plaintiff has very few friends. (AR 47.) She enjoys reading, watching television, and using the computer. (AR 47-48.)

With regard to treatment, Plaintiff is currently taking Zoloft. (AR 41.) Plaintiff testified that it helped some, but that she still struggles. (*Id*.) Plaintiff has also been prescribed Clonazepam and Celexa, and she was taking her brother's Benzodiazepine medication for a brief period of time. (AR 41, 42, 43, 52, 57.) She ceased taking Clonazepam and Celexa at her primary physician's suggestion. (AR 43.) Plaintiff was receiving mental health counseling at Kern County Neurological Medical Group and College Community Services. (AR 44.) At the time of the hearing, Plaintiff was receiving counseling at OMNI Family Health, to here she had been transferred, after College Community Services stopped accepting her health insurance. (AR 43-44.) Plaintiff testified that the counseling has not helped. (AR 44.)

**2. Vocational Expert's Testimony**

A Vocational Expert ("VE") testified at the hearing, as well. The VE testified that his testimony would be consistent with the Dictionary of Occupational Titles (the "DOT"). (AR

8

58.)  The ALJ stipulated that Plaintiff had no past work, and then he posed a series of hypothetical questions to the VE.  (AR 58.)

In the first hypothetical, the ALJ asked the VE to consider a person of Plaintiff's age, education, and past work experience who is capable of performing simple, routine, repetitive tasks involving occasional interaction with the public.  (AR 58.)  The ALJ asked the VE whether, given those considerations, such a person would be capable of performing any jobs that exist in significant numbers in the country.  (*Id*.)  The VE testified that such a hypothetical person could perform the following jobs: (1) janitor, DOT code 381.687-015, unskilled, medium work, SVP of 2, for which there exists 980,000 jobs nationally, 101,000 statewide, and about 50 percent of those available jobs are evening jobs where public contact is reduced; (2) kitchen helper, DOT code 318.687-010, medium work, SVP of 2, for which there exists 190,000 jobs nationally, and 13,000 jobs statewide; and (3) hand packager, DOT code 920.587-018, medium work, SVP of 2, for which there 447,000 jobs nationally, and 62,000 statewide.  (AR 59.)

The ALJ posed a second hypothetical to the VE, considering the same person with the same limitations outlined above, and only occasional interaction with co-workers and supervisors.  (AR 59.)  The VE testified that such a person could perform the three jobs identified above, as "occasional interaction . . . is typical in those kinds of jobs."  (AR 60.)

The ALJ posed a third hypothetical, considering the same person with the same limitations outlined above, but with the added limitation of avoiding concentrated exposure to such hazards as unprotected heights.  (AR 60.)  The VE testified that such a limitation may reduce the number of available evening janitor jobs by approximately ten percent.  (*Id*.)

The ALJ posed a fourth hypothetical, but with the added limitation of avoiding occasional exposure to loud noise.  (AR 60.)  The VE testified that such a person would be limited to the following light, production-oriented jobs: (1) small products assembler, DOT code 706.684-022, light work, SVP of 2, for which there exists 61,000 jobs nationally, and 5,000 jobs statewide; (2) cleaner, polisher, DOT code 709.687-010, light work, SVP of 2, for which there exists 70,000 jobs nationally, and 8,000 jobs statewide; and (3) inspector hand packager, DOT code 559.687-

9

074, mostly light, SVP of 1 or 2, for which there exists 123,000 jobs nationally, and 14,000 jobs statewide. (AR 61.)

Plaintiff's representative then asked the VE the same hypothetical, but with the added limitation of being able to deal with workplace stressors only 50 percent of the time. (AR 62.) The VE testified that such a limitation would preclude all work. (AR 63.)

**C.     The ALJ's Decision**

In a decision dated April 27, 2015, the ALJ found that Plaintiff was not disabled. (AR 16-26.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 18–26.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since June 14, 2013, the application date. (AR 18.) The ALJ found that Plaintiff had the severe impairments of depressive disorder and anxiety. (*Id.*) However, at the Third Step of the sequential analysis, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 19-21.) In reaching this conclusion at the Third Step, the ALJ found that Plaintiff has mild restrictions in her activities of daily living (AR 19), moderate difficulties in maintaining social functioning (AR 20), mild difficulties in maintaining concentration, persistence, and pace (*Id.*), and no episodes of decompensation, (*Id.*).

At Step Four of the sequential analysis, the ALJ determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, routine, repetitive tasks involving occasional contact with the public, co-workers, and supervisors." (AR 21.) In reaching this determination, the ALJ found that Plaintiff's subjective complaints were inconsistent with her medical and clinical history. (AR 22.) In particular, Plaintiff's medical treatment had been conservative: she required no overnight hospitalization since the alleged disability onset date; she reported that her symptoms were fairly well controlled with medication; and her psychiatric system was unremarkable and normal. (AR 22-23.) For a period of time, Plaintiff failed to comply with the medical treatment for her anxiety, and instead used her brother's Benzodiazepines. (AR 23.) Additionally, Plaintiff's mental status examination was mild—consultative psychologist Dr. Barnes noted that

Plaintiff was fully oriented, and Dr. Barnes assessed Plaintiff's GAF score as 62, which the ALJ characterized as indicative of mild symptoms. (*Id*.) Plaintiff's alleged disabling conditions stabilized after the alleged onset date. (*Id*.)

The ALJ found Plaintiff to not be credible. The ALJ found that Plaintiff's lack of work history suggested that Plaintiff's reason for not working was unrelated to her alleged disabilities. (AR 23.) The ALJ found the statements by Plaintiff's third party, Donald Sommers, the caretaker of her brother, to not be credible, either. (AR 24.) The ALJ further found Dr. Barnes, the consultative psychologist, to not be credible. (*Id*.) The ALJ determined that Dr. Barnes (1) overestimated the severity of Plaintiff's abilities, (2) examined Plaintiff only once, (3) reviewed minimal records prior to the evaluation and instead relied on Plaintiff's subjective complaints, and that Plaintiff's GAF score of 62 was inconsistent with Dr. Barnes' opinion about Plaintiff's functional capacity. (*Id*.) The ALJ credited the opinions of the state agency physician, Dr. Paxton, and the state agency psychologist, Dr. Berkowitz. (*Id*.) The ALJ gave greater weight to the opinion of Dr. Berkowitz, finding that his opinion was more consistent with Plaintiff's clinical history and Plaintiff's daily activities of shopping, travelling to Los Angeles, and having friends. (*Id*.)

Finally, at Step Five, the ALJ determined that, Plaintiff had no past relevant work, and that, given her RFC, she was not disabled because she could perform a significant number of jobs in the local and national economies. (AR 25.) Specifically, the ALJ found that Plaintiff could perform the jobs of janitor, kitchen helper, and hand packager. (AR 25.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on July 13, 2016. (AR 1-7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D.  Plaintiff's Appeal**

On September 14, 2016, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff argues that the ALJ failed to give specific and legitimate reasons for discrediting the opinion of examining psychologist, Dr. Barnes. (*See generally* Doc. 15 at 3-7.)

11

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3),

1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

Plaintiff contends that, at Step Four of the sequential analysis, the ALJ failed to give specific and legitimate reasons for discrediting the opinion of consultative psychologist, Dr. Barnes. (*See generally* Doc. 15 at 3-7.) In discrediting Dr. Barnes, the ALJ found, in particular, that (1) Dr. Barnes' opinion about Plaintiff's functional capacity conflicted with her assessment of Plaintiff's GAF; (2) Dr. Barnes overestimated the severity of Plaintiff's symptoms; (3) Dr. Barnes examined Plaintiff only once; and (4) Dr. Barnes reviewed minimal records and instead relied on Plaintiff's subjective complaints. (AR 24.) The Commissioner counters that the ALJ reasonably discredited Dr. Barnes' opinion "because it was internally inconsistent, pre-dated most treatment, and was inconsistent with the record showing improvement with treatment." (Doc. 17 at 4.)

## A. Legal Standard

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Madrigal v. Berryhill*, No. CV 16-8714-E, 2017 WL 3120257, at *3 (C.D. Cal. Jul. 21, 2017). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Madrigal*, 2017 WL 3120257, at *3 (quoting *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981)). Nor can the ALJ make his or her own lay medical assessment. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (a hearing examiner not qualified as a medical expert should not make his or her own exploration and assessment of a claimant's medical condition) (citation omitted).

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physicians); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physicians). *Fatheree v. Colvin*, No. 1:13-cv-01577-SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

It is uncontested that Dr. Barnes examined Plaintiff, and thus is considered an examining physician. (*See, e.g.*, AR 24.) "As in the case with the opinion of a treating physician, the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (citation omitted). "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another

14

doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31 (citation omitted). Nonetheless, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)).

**B.    The ALJ's Finding that Dr. Barnes' Opinion Conflicted Internally and with the Objective Medical Evidence in the Record Constituted Legitimate and Specific Reasons for Discrediting the Opinion of Dr. Barnes.**

In rejecting the opinion of Dr. Barnes, the ALJ reasoned, in part, that Dr. Barnes' opinion about Plaintiff's functional capacity conflicted with Dr. Barnes' assessment of Plaintiff's GAF score of 62, as well as the objective medical evidence in the record. (AR 24.) Plaintiff contends that, in the Ninth Circuit, the GAF scale, as it relates to a claimant's ability to perform work activity, "is neither determinative [of disability] nor relevant." (Doc. 15 at 6.) The Commissioner counters that "the ALJ did not find the GAF score itself indicated non-disability," but rather that Dr. Barnes' opinion of Plaintiff's functional limitations was unreliable given the discrepancy between the GAF score indicating only mild symptoms or limitations, on one hand, and Dr. Barnes' opinion, on the other hand, of moderate and marked limitations. (Doc. 17 at 6.) The Court agrees with the Commissioner's position.

In her one-time evaluation of Plaintiff on August 10, 2013, Dr. Barnes assessed Plaintiff's GAF score to be 62 (AR 262), which indicates "[s]ome mild symptoms (*e.g.*, depressed mood, and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships," DSM IV–TR at 34. Despite this assessment, Dr. Barnes opined that Plaintiff was *markedly* impaired in her ability to deal with workplace stressors, *moderately* impaired in her ability to regularly perform work activities, and *moderately* impaired in her ability to accept instructions from supervisors and to interact with coworkers and the public. (AR 263.) The ALJ properly found this to constitute a conflict, as courts have repeatedly upheld an ALJ's finding that a conflict exists where a physician's assessment of the claimant's GAF score indicates mild limitations, but the physician opines that the claimant is moderately or

15

markedly limited in her functional capacity. *See*, *e.g.*, *Curtin v. Colvin*, No. EDCV 14-2551-JPR, 2016 WL 2642211, at *8 (C.D. Cal. May 9, 2016) (finding contradiction between neuropsychologist's assessed GAF score of 62 and assessment that plaintiff's limitations would preclude work at the level of substantial gainful activity); *Meeks v. Colvin*, No. 2:13-cv-1522-EFB, 2014 WL 4925291, at *3 (E.D. Cal. Sept. 30, 2014) ("[T]he ALJ properly relied on the inconsistency between the severe limitations assessed and plaintiff's GAF score of 75, which suggested only mild symptoms and limitations."); *Howes v. Astrue*, No. CV-08-00232-JPH, 2009 WL 1659673, at *10 (E.D. Wash. June 11, 2009) (ALJ properly rejected physician's opinion that plaintiff had marked mental limitations where the same physician assessed an inconsistent GAF score "indicating only mild to moderate symptoms").

The conflict between Plaintiff's GAF score and Dr. Barnes' assessment of Plaintiff's functional capacity was a specific and legitimate reason for the ALJ to discredit Dr. Barnes. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (finding that contradiction between physician's opinion and evidence in the record, including physician's own treatment notes, constituted specific and legitimate reason for rejecting physician's opinion); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (a treating physician's opinion is properly rejected where the treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant'"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999) (holding that an ALJ may properly reject a treating physician's opinions that are internally inconsistent or that are inconsistent with the physician's treatment notes); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (same); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (same).

Even to the extent that Dr. Barnes' assessed GAF score of 62 did not necessarily conflict with her finding that Plaintiff suffered moderate and marked limitations—or to the extent that such a conflict does not, alone, constitute a specific and legitimate reason for rejecting Dr. Barnes' opinion—the ALJ's reliance on the objective evidence in the record supports the ALJ's rejection of Dr. Barnes' opinion. *See Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007) ("[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the

treating physician,' such findings are 'substantial evidence."), citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985); *see also*, *Smalling v. Comm'r of Soc. Sec.*, No. 1:11-cv-01064-BAM, 2012 WL 6088290, at *12 (E.D. Cal. Dec. 6, 2012) ("Nonetheless, by relying on the independent clinical findings of Dr. Izzi in making his residual functional capacity assessment, the ALJ's rejection of Dr. Aborado's conclusions were made for a specific and legitimate reason based on substantial evidence in the Record."); *Plambeck v. Astrue,* No. 1:08-cv-01092, 2009 WL 2501359 (E.D. Cal. 2009) ("The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings"), citing *Andrews v. Shalala,* 53 F.3d at 1041; *Martin v. Astrue*, 2009 WL 3617796, at *8 (E.D. Cal. Oct. 28, 2009).

Dr. Barnes found that Plaintiff was moderately impaired in her ability to regularly perform work activities. (AR 263.) However, three weeks after Dr. Barnes evaluated Plaintiff, state agency psychiatrist Dr. Paxton opined that Plaintiff had no limitations to her understanding and memory, or to her sustained concentration and persistence, and only moderate limitations in her social interaction. (AR 71, 73.) State agency psychiatrist Dr. Berkowitz agreed with Dr. Paxton. Dr. Berkowitz noted that "[w]hile [Dr. Barnes] concludes [Plaintiff] is markedly impaired to deal with stressors, the totality of the record does not appear to suggest she is precluded from all work. [Plaintiff] seems somewhat dependent on brother's caregiver and the record suggests this is somewhat of a life-long pattern of dependency rather than indicative of a debilitating depression." (AR 87.) Dr. Berkowitz concluded that Plaintiff "is able to persist at tasks that can be learned in up to one month on the job with occasional public contact." The ALJ afforded more weight to the state agency psychiatrists than Dr. Barnes on the ground that their opinions were supported by the other objective medical evidence. (AR 24.)

Dr. Berkowitz's opinion, rather than that of Dr. Barnes, is borne out by the other evidence in the record. During an evaluation at OMNI on May 2, 2013, it was noted that Plaintiff's depression worsened as a result of her mother's death in 2013, and that her initial symptoms had improved as a result of her medication treatment. (AR 298, 299.) Plaintiff acknowledged as

17

much herself during an evaluation at College Community Services on July 23, 2013, stating that she had been depressed since childhood, and that it worsened as a result of her family circumstances. (*See* AR 280.) The social worker at College Community Services found that Plaintiff's judgment, insight, and memory were good, and that her thought processes were coherent and unremarkable. (AR 283, 284, 289.) Thus, the internal inconsistency in Dr. Barnes' opinion, as well as its inconsistency with the other objective medical evidence in the record constituted specific and legitimate reasons for discrediting Dr. Barnes' opinion.

**C.     The ALJ's Finding that Dr. Barnes Relied on Plaintiff's Subjective Complaints Constituted a Legitimate and Specific Reason for Discrediting the Opinion of Dr. Barnes.**

The ALJ properly discredited Dr. Barnes' assessment of Plaintiff for the additional reason that Dr. Barnes "appeared to rely on [Plaintiff's] subjective allegations." (AR 24.) As discussed above, the inconsistencies in Dr. Barnes' opinion undermine Dr. Barnes' assessment of Plaintiff's limitations which strongly indicates that Dr. Barnes relied primarily on Plaintiff's subjective complaints and self-reporting of symptoms. *See Messerli v. Berryhill*, No. 1:16-cv-00800-SKO, 2017 WL 3782986, at *9 (E.D. Cal. Aug. 31, 2017) (finding that lack of support for treating physician's assessed limitation "strongly indicat[ed] he relied primarily on Plaintiff's subjective complaints and self-reporting symptoms"). Dr. Barnes admitted in her report that she only relied on her evaluation of Plaintiff and the function reports from the Social Security Administration and the Department of Social Services. (AR 259.) In other words, Dr. Barnes did not review any of Plaintiff's treatment records from College Community Services or from OMNI, where Plaintiff was treated for over three years. A treating physician's opinion is properly rejected if based on discounted subjective complaints. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001).

The ALJ discounted Plaintiff's subjective complaints on the following grounds, each of which constitutes a specific and legitimate reason for an adverse credibility finding: (1) Plaintiff had no work history (suggesting her alleged inability to work was unrelated to her impairments), *see Chacon v. Astrue*, No. EDCV 09-0851 AJW, 2011 WL 2437386, at 5 (C.D. Cal. Jun. 15, 2011) ("The ALJ was entitled to conclude that plaintiff's lack of work history suggested a lack of

motivation and reflected negatively on the credibility of his subjective complaints."); (2) Plaintiff had a history of conservative treatment, *see McKnight v. Comm'r of Soc. Sec.*, No. 1:12-cv-00726-AWI-JLT, 2013 WL 12073218, at *2 (E.D. Cal. Sept. 2013) ("The treatment [a claimant] received, especially when conservative, is a legitimate consideration in a credibility finding.") (citing *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)); (3) Plaintiff had a history of non-compliance with her medication, *see Cohn v. Berryhill*, No. 2:16-cv-07352-GJS, 2017 WL 4772398, at *4 (C.D. Cal. Oct. 20, 2017) (finding that the claimant's "unexplained failures to take prescribed hypertension and diabetes medication on a regular basis and to keep his appointments for medical tests, as well as Plaintiff's conservative treatment despite his allegedly disabling symptomatology are clear and convincing reasons for discounting Plaintiff's testimony"); (4) Plaintiff's hearing testimony was internally inconsistent, *see Garcia v. Astrue*, No. 1:09-cv-1629, 2011 WL 1047330, at *8 (E.D. Cal. Mar. 18, 2011) ("In rejecting testimony regarding subjective symptoms, permissible grounds include . . . internal contradictions in the testimony . . .") (citing *Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir.2004); *Thomas v. Barnhart,* 278 F.3d 947, 958–59 (9th Cir.2002)); and (5) Plaintiff's complaints were inconsistent with the objective medical evidence in the record,[8] *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis."). (AR 22, 23.)

Notably, Plaintiff does not challenge the ALJ's adverse finding as to Plaintiff's credibility. (*See* AR 21-24.) The Court therefore finds that the ALJ properly discredited Plaintiff's subjective complaints. *See Galeana v. Astrue*, 2012 WL 1669677, at 7 (C.D. Cal. May 14, 2012) (conclusively finding that the ALJ properly discredited the claimant's subjective complaints where the claimant did not challenge the ALJ's adverse credibility determination); *Messerli*, 2017 WL 3782986, at *9 ("In this case, the ALJ found Plaintiff's testimony not credible

---

[8] The Court notes that, while objective medical evidence, by itself, is insufficient to impugn a claimant's credibility, the ALJ can consider a lack of medical evidence along with other stated reasons in his credibility analysis. *Burch*, 400 F.3d at 680-81; see also SSR 96-7p; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence . . ."); *Pheng v. Comm'r of Soc. Sec.*, No. 1:12-cv-00582-JLT, 2013 WL 1623596, at *4 (E.D. Cal. Apr. 15, 2013) ("[A]n ALJ may not base an adverse credibility determination solely upon the medical evidence." (citations omitted)).

19

and Plaintiff has not challenged that finding . . . Plaintiff's lack of credibility was therefore a specific and legitimate reason, supported by the record, for the ALJ to discount Dr. Shaheen's opinion to the extent that it was based on Plaintiff's subjective complaints") *see also Capitani v. Astrue*, No. 07CV0266 JAH (AJB), 2008 WL 11355422, *7 (S.D. Cal. May 16, 2008) (where plaintiff failed to challenge ALJ's determination that plaintiff's mother was not credible, the court deemed any such challenge waived). As Dr. Barnes' opinion was based primarily on Plaintiff's subjective complaints, Plaintiff's lack of credibility was a specific and legitimate reason for the ALJ to discount Dr. Barnes' opinion.

In summary, the ALJ provided specific and legitimate reasons for rejecting the opinion of Dr. Barnes, and therefore substantial evidence supports the ALJ's decision. Accordingly, neither reversal nor remand of the ALJ's decision is warranted.

### VI. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Catherine McGee.

IT IS SO ORDERED.

Dated: __**February 6, 2018**__                    /s/ *Sheila K. Oberto*
                                                                        UNITED STATES MAGISTRATE JUDGE